UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


APOTEX, INC. and BERNARD C. SHERMAN,

      Plaintiffs,

v.

EON LABS MANUFACTURING, INC.,

      Defendant.

_____/

Case Nos.   01-CV-0482
                02-CV-1604

HONORABLE AVERN COHN


## MEMORANDUM AND ORDER REGARDING ATTORNEY FEES AND EXPENSES

### I. INTRODUCTION

This is a patent case tried to the Court. On the morning of the sixth day of a bench trial, following five (5) years of hard fought and sometimes contentious pretrial proceedings, the case was dismissed when defendant's lawyers, by either a telephone call or check of the internet, discovered that the patent-in-suit was invalid because the application in the United States Patent Office was filed more than twelve (12) months after the invention was first patented in New Zealand. See 35 U.S.C. §102(d). Now before the Court is defendant's Motion for an Award of Litigation Expenses Under 35 U.S.C. §285 And The Court's Inherent Power To Impose Sanctions. The request is for an award as of January 1, 2006 in the amount of $4,435,656.00 in attorney fees and expenses.

For the reasons which follow, the motion will be granted, but not in the amount requested because defendant bears some responsibility for the debacle that this case

represents.[1]

## II. THE PATENT-IN-SUIT AND THE PARTIES

U.S. Patent No. 5,798,333 (the '333 patent) covering Water-Soluble Concentrates Containing Cyclosporin is the patent-in-suit. The inventor is plaintiff, Bernard C. Sherman. Plaintiff, Apotex, Inc., a Canadian corporation, is the exclusive licensee of Sherman. Sherman is a prolific inventor with numerous patents in which he is named inventor.[2] Apotex is the largest generic drug manufacturer in Canada and experienced in patent cases.[3]

The accused product, CD/CCLOSPORINE Capsules, UPS (Modified) is sold in the United States by defendant, Eon Labs Manufacturing, Inc.[4] Eon is a distributor of generic pharmaceuticals and was at the time of suit a partially owned subsidiary of a major German

---

[1] The Court originally contemplated having oral argument on the motion. During the course of briefing, as will be explained, the parties filed detailed and voluminous papers. Any questions the Court had were put to the parties, who responded in detail. Under these circumstances, where the issue has been fully vetted, the Court finds that oral argument is not necessary.

[2] A Google search lists at least twenty-three (23) patents in Sherman's name. Sherman, in a pretrial deposition, said that he had been involved in enough law so that he knew "what's relevant and what's not." A New York Times article published August 15, 2006 describes Sherman's considerable accomplishments in the generic drug industry. See Saul, Stephanie, A Generic Drug Tale, With an Ending Yet to Be Written, N.Y. Times, Sec. C, Page 1 col. 3.

[3] See www.Apotex.com for a description of Apotex's history and scope of operations. A Westlaw search lists eighty-one (81) patent cases in which Apotex is a party. For an example, see Apotex USA, Inc. v. Merck & Co., Inc., 245 F.3d 1031 (Fed. Cir. 2001).

[4] See www.answers.com/topic/eon-labs-inc. for a description of Eon's history and scope of operations.

2

pharmaceutical company, Hexal.[5]

The case was initially filed on January 26, 2002, and re-filed on March 14, 2002.

## III. PROCEDURAL POSTURE OF THE CASE

### A.

On July 12, 2005, the parties stipulated and the Court signed an order to the following effect:

- the '533 patent is invalid under 35 U.S.C. §102(d).

- Apotex's claims are dismissed and Eon's claims of invalidity and non-infringement are also dismissed.

- The case continues on Eon's claims for attorney fees and expenses and claim of unenforceability by reason of breach of the duty of candor in the prosecution of the '533 patent in the Patent Office.

On March 21, 2006, the Court entered an order directing Eon to file a motion to set for trial its claim of unenforceability,[6] observing that it appeared that it was moot.[7] It also

---

[5] Hexal is a German company and manufacturer of generic drugs. See www.Hexal.de.

[6] The essence of the claim of unenforceability was based on the manner with which Sherman handled the Klokkers reference. See fn. 11, infra.

[7] In Technimark, Inc. v. Crellin, Inc., 14 F.Supp.2d 762 (M.D.N.C. 1998) the court held that a counterclaim of non-infringement and invalidity could not go forward after the plaintiff dedicated its patent to the public and moved to dismiss the action as moot. The situation here appears to be analogous; once there was agreement that the '533 patent was void, the Court no longer had a case or controversy to adjudicate. Of course, the attorney fee issue continued. See Highway Equipt. Co., Inc. v. FECO, Ltd., 2005 WL 936469 (N.D. Iowa Apr. 22, 2005). As the Court said in the Order of March 21, 2006:

> On reflection it appears that the relevant counterclaims are moot in light of the invalidity of the patent-in-suit under 35 U.S.C. §102(d), and any further

directed the filing of an application for attorney's fees.

On April 20, 2006, Eon filed Amended Proposed Findings of Fact and Conclusions of Law Regarding Invalidity and Unenforceability.

On April 24, 2006, Apotex filed its Brief in Response to Eon's Motion For Attorney Fees and Inequitable Conduct Counterclaim To Be Adjudicated.

On May 2, 2006, the Court entered an Order Relating to Defendant's Request for Attorney Fees Involving U.S. Patent No. 5,798,333 (the '333 Patent) in which it stated in part:

> ... Given that plaintiff applied for a patent to which it was not entitled as a consequence of having received an identical patent in New Zealand (No. 272,653), more than one (1) year prior to filing the application for the '333 patent, the Court sees nothing in the proofs that defendant wants to offer on inequitable conduct that would improve its position regarding its request for attorney fees under 35 U.S.C. § 285. At the end of the day, there will be no dispute over the fact that plaintiff should never have been in the Patent Office in the first place, and that the end result of the application for the '333 patent was a nullity.
>
> Accordingly, defendant shall have twenty (20) days in which to file an application for attorney fees. The supporting papers may assert whatever grounds defendant deems relevant to the request. Plaintiff shall have twenty (20) days thereafter to respond. The Court will schedule a hearing to be held thereafter.

---

adjudication by the Court would take the form of an advisory opinion since there is no case or controversy between he parties.

This statement had little effect on Eon. In every subsequent filing, Eon has argued what it considers to be Apotex's misconduct in the Patent Office for one of two reasons so far as the Court can tell. Either Eon believes that somehow a finding of misconduct on Apotex's part would improve the merit of its claim for attorney's fees or perhaps, simply to tarnish Apotex's reputation; the generic drug industry is highly competitive.

B.

On May 31, 2006, Eon filed the motion now before the Court. Eon asks for reimbursement of expenses (up to April 28, 2006) of $794,314.11 (Exhibit A attached), and attorney fees of $3,641,342.00 (Exhibit B attached).[8] In addition, Eon asks for prejudgment interest.

Apotex responded on July 6, 2006. Eon replied on December 8, 2006. The reply was delayed as a consequence of the Court having to enter an Order Requiring Production of Documents to enable Eon to test Apotex's assertion that a mistake was made in filing the United States application, that the application was filed in good faith, and that there was no deception in Sherman's signing of a Rule 63 Declaration and Power of Attorney. The Court, following Eon's motion and Apotex's response, entered an order requiring Sherman to submit to a deposition to enable Eon to examine into his assertion of a good faith mistake.[9]

_____

[8] Exhibit B was supplied by Eon at the Court's request. Initially, Eon filed the individual attorney and paralegal billing records and did not aggregate the hours worked or dollar amounts. In order to adequately assess the reasonableness of a fee application, the Court must review the hours worked at each stage of the litigation and the total dollar amount associated with the hours. The Court requested such information from Eon. Eon's response (Exhibit B) falls short. It merely reflects the amount of attorney and paralegal hours as to specific tasks. It does not contain a calculation as to the dollar amount associated with these hours. Regardless, given the volume of billing records, the Court did not ask for any further submissions.

[9] See Order Requiring Production of Documents filed September 13, 2006 and Order of October, 2006. These orders were necessitated by Apotex's stonewalling in discovery regarding the circumstances of the filing of the '333 patent. The manner in which Apotex and Eon litigated the case reflects all that is bad in patent litigation. This order was at one with the orders entered during the course of discovery to break Eon's stonewalling of efforts by Apotex to establish the problems associated with developing a pharmaceutical product utilizing Cyclosporin. See Memorandum and Order Granting Plaintiffs' Motion to Compel Production of Hexal's Research and Development

Eon filed a reply on December 8, 2006. Apotex filed a sur reply on December 20, 2006.

## IV. THE NEW ZEALAND PATENT

The New Zealand patent, Patent No. 276,253, a Water Soluble Concentrate Containing Cyclosporin, was applied for by Sherman on July 26, 1995. Sherman drafted the application. The specification is identical to the specification of the '333 patent. The application was prosecuted by a New Zealand firm of attorneys as correspondents for a Toronto, Canada firm of attorneys.

Brigitte Fouillade, a member of the Toronto firm, handled the Toronto end of the application. Fouillade subsequently went in-house at Apotex before the patent issued.

The Notice of Acceptance of Complete Specification was issued on December 14, 1995. The application was published on January 26, 1996.[10] The Request for Sealing of a Patent was filed on May 13, 1996.[11] Letters of Patent were issued on May 14, 1996. Apotex was notified by the New Zealand firm of attorneys of the issuance of the patent by a letter sent on September 11, 1996. Their letter was received at Apotex on September 18, 1996.

---

Documents Concerning the Accused Product, entered December 8, 2004. The earlier order was sealed. The sealing is VACATED.

[10] Fouillade knew by a letter sent her on February 28, 1996 from the New Zealand law firm that the Notice of Acceptance meant that the patent would issue in four (4) months.

[11] Sealing the patent confirms that it has issued.

6

## V.  THE UNITED STATES PATENT

### A.

The '333 patent was applied for by Sherman on September 17, 1996.  Sherman prompted the filing of the United States application as will be described below.  The application was signed by a lawyer retained by Apotex.  The specification is identical to the specification for the New Zealand patent.  No reference was made in the application to the New Zealand application or patent.  On October 31, 1996, the Patent Office issued a Notice of Missing Parts of Application stating that the oath or declaration was missing.  A Rule 63 Declaration dated in handwriting September 14, 1996, signed by Sherman under oath was filed in the Patent Office on November 26, 1996.[12]  A copy of the Declaration is attached as Exhibit C.

Peculiarly, the Declaration states that the application was filed on September 17, 1996.  The Declaration also states:

> I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.  I acknowledge the duty to disclose information which is material to the patentability of this application in accordance with 37 CFR 1.56.  I hereby claim foreign priority benefits under 35 USC §119/365 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed or, if no priority is claimed, before the filing date of this application:
>
> Prior Foreign Application(s):
>
> Application Number      Country      Day/Month/Year Filed

---

[12]  The chronology of the signing of the Rule 63 Declaration is described *infra*.

\* \* \*

> I hereby declare that all statements made herein of my own
> knowledge are true and that all statements made on
> information and belief are believed to be true; and further that
> these statements were made with the knowledge that wilful
> false statements and the like so made are punishable by fine
> or imprisonment, or both, under Section 1001 of Title 18 of the
> United States Code and that such wilful false statements may
> jeopardize the validity of the application or any patent issued
> thereon.

\* \* \*

B.

The application was initially rejected as anticipated by Klokkers,[13] 35 U.S.C. §102(a),

in an Office Action dated March 28, 1997, and mailed April 2, 1997. The rejection was

accompanied by form PTO-892 (Rev. 9-95) Notice of References Cited, a copy of which

is attached as Exhibit D. As can be seen, the examiner, in the course of his work, located

the New Zealand patent and erroneously stated its "date" is 12/96.[14] In the Office Action

---

[13] See footnote 5, supra. The claim of unenforceability because of misconduct is
based on Sherman's failure to file the English translations of the Klokkers reference.
Sherman had in his possession the translation which was initially obtained in connection
with his application for a patent for a cyclosporin-based product in New Zealand. It is
doubtful that this claim would have prevailed. The Court twice dealt with Klokkers
pretrial. See Memorandum and Order of March 10, 2003 (magistrate judge held that
when examiner discovered a foreign language reference independently and cites it,
there can be no fraud in not providing an unrequired English translation) and
Memorandum filed February 9, 2005 (denying motion for summary judgment of
invalidity). See also, Atofina v. Great Lakes Chemical Corp., 441 F3d 991 (Fed. Cir.
2006) (holding that the failure of patent applicant to disclose full English translation of
prior art Japanese patent was not inequitable conduct absent showing of intent to
deceive; applicant disclosed translated abstract of patent, and did not mischaracterize it
when discussing prior art with examiner).

[14] A U.S. Patent, Kovaos, is also listed as a reference in the Notice and its date
is also 12/96.

the examiner stated:

> Application is advised of possible benefits under 35 U.S.C.
> 119(a)-(d), wherein an application for patent filed in the United
> States may be entitled to the benefit of the filing date of a prior
> application filed in a foreign country.

A follow-up amendment distinguished Klokkers. No mention was made in the follow-up amendment regarding the examiner's advice.

C.

The '333 patent issued on August 25, 1998. The facing page, a copy of which is attached as Exhibit E, references the New Zealand patent.

VI. REVELATION OF THE INVALIDITY OF THE '333 PATENT

After contentious and protracted pretrial proceedings, both with regard to discovery and Eon's efforts to establish invalidity because of anticipation by a prior art document, published International Patent Application WO95/11039, filed by Karen Klokkers, et al. (Klokkers), the case went to trial on Wednesday, May 11, 2005, and continued on Thursday and Friday of that week. Trial resumed Monday, May 16, 2005.

During the course of a colloquy on Monday, one of many during the first 3 days of trial relating to Klokkers, and particularly the fact that the patent examiner had only the German version of the document, reference was made to the fact that Sherman was aware of Klokkers during the course of the prosecution of the New Zealand application. The Court, piqued by a reference to New Zealand in a Brooklyn courtroom, during the course of the colloquy, stated:

> THE COURT: Tell me about New Zealand. I always
> wanted to go there.

This led to a discussion of why Sherman filed his initial application in New Zealand.

There was no explanation. The following day, Tuesday, another colloquy took place:[15]

>THE COURT: Is there any significance to the fact that his initial application was in New Zealand? That seems an awful long way to go when you have a patent to get started. It just, you know, it just seems to me something out of the ordinary why he would – and I think there was a reference that he made initial applications to New Zealand before. Is there something in the New Zealand Patent Office?

>MR. SILVER (Attorney for Apotex): Well, Your Honor, I don't know if it is the case for this case but I do know for other clients that I've worked on, some countries are faster issuing patents than other countries.

>THE COURT: Did he ever get a patent in New Zealand?

>MR. SILVER: I have no idea.

>MR. BERNSTEIN (Attorney for Apotex): Yes, he did.

>THE COURT: Well, now, Mr. Bernstein, that's okay, what do you want to tell me about New Zealand?

>MR. BERNSTEIN: I believe Dr. Sherman filed first in New Zealand because it was an early issuing country and also that there's –

>THE COURT: What do you mean early issuing?

>MR. BERNSTEIN: You got it quickly, there was maybe a year elapsed between filing and issuance. And the other reason I think is the fact that there is among patent attorneys some arguments, which Dr. Sherman must have heard, that you can get an extra year on your U.S. patent term if you file in a country like New Zealand. I never quite understood the argument and I asked him about it once upon a time and that's what he sort of told me.

---

[15] The previous day the proofs were concluded on validity. Tuesday morning proofs began on the issues of invalidity, i.e., anticipation and obviousness, and unenforceability. The Tuesday colloquy took place in the course of Apotex's opening statement.

THE COURT: But he didn't follow up in New Zealand?

MR. BERNSTEIN: Yes, he got a New Zealand patent.

MR. POKOTILOW (Attorney for Eon): What he didn't do, Your Honor, was get the priority date in the United States, he lost the date. He would have had a reference date going back to 1995 had he been able to –

THE COURT: File within one year.

MR. POKOTILOW: That's correct but he missed that and that's why I'm saying that what the office was there was absolutely non-professional.

This discussion regarding New Zealand caught the attention of an Eon lawyer sitting in the courtroom. Later that day, the lawyer either called the New Zealand Patent Office or checked its website and discovered that the New Zealand patent issued on May 14, 1996 and not in December, 1996, as stated on the facing page of the '333 patent. This meant of course that under 35 U.S.C. §102(d) the '333 patent was invalid since the invention was first patented in a foreign company more than twelve (12) months before the application for the '533 patent was filed in the United States.

This information was immediately communicated to the Apotex lawyers who on verifying it readily agreed that their infringement case was at an end. On Wednesday, May 18, 2005, the trial was adjourned without date so the parties could have time to decide on the future course of the case.

The future course of the case has been described above.

## VII. EXPLANATION(S) FOR THE MISTAKE

### A.

#### 1.

Sherman, in a declaration dated June 26, 2002, accompanying Apotex's initial response to Eon's motion for attorney fees, explained his failure to cite the New Zealand patent in the application for the '333 patent in relevant part as follows:

- he is not an attorney and has no legal training[16]

- he filed the application for the '333 patent

- he earlier filed the application for the New Zealand patent which covers the same claimed invention as the '333 patent

- the New Zealand application was handled by Canadian and New Zealand law firms

- while the New Zealand application was pending, Apotex set up its own patent department under Fouillade, who previously, while a member of the Canadian law firm, engaged the lawyers handling the New Zealand application

- on or about August or September 1996, he became aware that there had been a failure to file within one year of the filing date of the New Zealand application a corresponding application in the United States Patent Office

- at that time he asked Fouillade to file a United States application immediately

- at the time he believed the New Zealand patent had neither been published nor

---

[16] While technically true, there is a disingenuousness to this assertion. See n. 2 supra.

12

granted[17]

- as part of the application procedure for the United States he signed a Declaration and Power of Attorney [etc], and "dated it September 14, 1996."

- at the time he signed the Rule 63 Power of Attorney on September 14, 1996, "[he] was not aware that the prior New Zealand application was required to be listed..."

- the failure to properly complete the declaration "was unintentional and purely oversight on my part or on the part" of the attorneys who prepared it.

- Particularly, Sherman stated:

> At the time I filed the '033 application[18] which resulted in the '333 patent (on or about September 17, 1996), I was not aware that any New Zealand application covering the same subject matter invention as that of the '033 application had previously issued into a New Zealand patent.

> I had no knowledge that the New Zealand application covering the same subject matter invention as that of the '033 application had issued into a New Zealand patent prior to September 14, 1996 at which time I signed the Rule 63 Power of Attorney in the '033 application.

2.

Also as part of Apotex's initial response to Eon's motion, the outside attorney who filed the application for the '333 patent filed a declaration which stated in part:

- At the request of Fouillade she filed the application for the '333 patent on or about September 17, 1996

---

[17] Knowledge that a New Zealand patent application is published prior to its grant reinforces the Court's view that Sherman is not a novice in the world of patents.

[18] U.S. Application No. 715,033 ('033 application) later matured into the '333 patent.

- She was unaware of the prior application filed in New Zealand
- She became aware of the New Zealand application in May, 2005, when advised by Apotex's counsel
- As part of the application, Sherman signed a Rule 63 Declaration form on September 14, 1996
- When she reviewed the Notice of References cited attached to the April 2, 1997 Office Action she was not aware of the New Zealand patent and therefore not aware that it was the same subject matter as that of the '033 patent application
- She was not aware that the New Zealand patent issued prior to the filing date of the '033 patent application

B.

1.

Subsequently, and as will be explained, following additional disclosure of documents and additional depositions it was established that:

- the Rule 63 Declaration was presented to Sherman for signature at the earliest September 26, 1996
- Between September 14, 1996 and September 26, 1996, Sherman learned that the New Zealand patent issued in May, 1996
- The September 14, 1996 date on the Rule 63 Declaration is an error. It was not signed on that date.

2.

The outside attorney who filed the application for the '033 patent filed a corrected

declaration[19] [etc] following the additional discovery in which she stated:

> As part of the '033 application, Dr. Sherman signed a Rule 63
> Declaration and Power of Attorney which bears a handwritten
> date of September 14, 1996 (A000064) (Exhibit 2). It has
> recently been brought to my attention that the letter I sent
> forwarding the Rule 63 Declaration and Power of Attorney to
> Dr. Sherman was not sent until September 17, 1996. I do not
> know the date the Rule 63 Declaration and Power of Attorney
> was actually signed by Dr. Sherman.

### C.

Fouillade, an experienced lawyer, who handled the New Zealand application for Sherman, and subsequently handled the application for the '333 patent for Sherman at Apotex, is deceased.

### VIII. THE LAW

### A.

In a patent action, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party," 35 U.S.C. §285. This includes expenses reasonably incurred, See Mathis v. Spears, 857 F.2d 749 (Fed. Cir. 1988).

What is an exceptional case has been the subject matter of a multitude of Federal Circuit cases and no useful purpose could be served by a detailed discussion of them. A good general statement of the law is found in Brooks Furniture Mfg., Inc. v. Dutailier, Intern., Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005), where the Federal Circuit said:

> A case may be deemed exceptional when there has been
> some material inappropriate conduct related to the matter in
> litigation, such as wilful infringement, fraud or inequitable

---

[19] In her declaration, filed as part of Apotex's initial response to Eon's motion, the attorney stated that as part of the '033 application Sherman signed the Rule 63 Declaration on September 14, 1996.

> conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violated Fed.R.Civ.P. 11, or like infractions.

(Citations omitted).

Two district court decisions elaborate on the rule in the context of this case. In Xantech Corp. v. Romeo Ind., Inc., 706 F. Supp. 661 (N.D. Ind. 1988), the district court found a case not exceptional where the plaintiff voluntarily dismissed its case when it found during the course of discovery that the patent-in-suit would be found invalid if litigated because of sales activity prior to one year before the application was filed. The district court said that the plaintiff's failure to conduct a pre-filing investigation of its patent did not constitute bad faith or gross negligence. What is significant for this case is the rule as explained by the district court:

> 35 U.S.C. §285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The prevailing party bears the burden of establishing the exceptional nature of the case by clear and convincing evidence. "Exceptional" cases include those involving bad faith, fraud, or gross negligence. The gross negligence standard includes wilful, wanton or reckless conduct or evidence indicating 'an utter lack of all care'. In other words, "conduct short of fraud, but in excess of simple negligence[,] is sufficient for deciding that the case is 'exceptional.'" Innocent or negligent omissions or misstatements do not justify an award under 35 USC §285.

706 F.Supp. at 664 (internal citations omitted). As to gross negligence by the appellant making a case exceptional, the court, in In re Jerabek, 789 F.2d 886, 891 (Fed. Cir. 1986) stated:

> In determining whether "inequitable conduct" has occurred, intent need not be proven by direct evidence or by proof of deliberate scheming. A permissible finding of gross negligence is sufficient and can be shown where appellant's attorney knew

> or should have known that the withheld reference would be
> material to the PTO's consideration. (Citations omitted.)

Cf. Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876 (Fed. Cir. 1988) ("We adopt the view that a finding that particular conduct amounts to "gross negligence" does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.")

Closer in time and to the facts of this case is Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc., 2005 WL 3634617 (N.D. Cal. Nov. 21, 2005), where after extensive discovery plaintiff withdrew its case because all of the inventive activity relating to the patent-in-suit took place in Taiwan, a country not a member of the World Trade Organization or a signatory to the North American Free Trade Agreement, and as a consequence, the earliest possible invention date under 35 U.S.C. §104 was the date the application was filed. There was undisputed evidence that the accused product was made and sold prior to the filing date of the application. Because the plaintiff knew or should have known before it filed suit that the accused product was prior art, the case was exceptional under §285, and defendant was entitled to attorney's fees. The district court found the suit to be frivolous, brought in subjective bad faith and objectively baseless. It said:

> Marvell argues it is entitled to an award of fees because
> Realtek should have known that its patent infringement claim
> was not meritorious before it filed its complaint, i.e., that
> Realtek filed a "frivolous" lawsuit. ... ("A frivolous infringement
> suit is one which the patentee knew or, on reasonable
> investigation, should have known, was baseless.") As noted,
> "[a]bsent misconduct in conduct of the litigation or in securing
> the patent, sanctions may be imposed against the patentee
> only if both (1) the litigation is brought in subjective bad faith,
> and (2) the litigation is objectively baseless."

17

> If "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." "A party confronted with the difficulty of proving what is in an adversary's mind must be at liberty to prove facts establishing that that Adversary should have known, i.e. to prove facts that render the 'I didn't know' excuse unacceptable." ... This is not to suggest that a showing of simple negligence will suffice. As the Federal Circuit has observed, however, 'studied ignorance' is not the same thing as simple negligence.

Id. at *3-4 (internal citations omitted).

* * *

> A lawsuit is objectively baseless when "no reasonable litigant could realistically expect success on the merits." For the reasons set forth above, the instant litigation was objectively baseless, because no reasonable litigant could have expected to prevail on a claim of patent infringement when the allegedly infringing product constitutes invalidating prior art.

Id. at *6.

Federal Circuit precedents also require that a court explain its reasons for an award of attorney fees. See Hughes v. Novi Am., Inc., 724 F.2d 122, 124 (Fed. Cir. 1984) (stating that "[w]hile an award of attorney fees is to be reviewed under the standard of whether such award constitutes an abuse of discretion, an award must be set aside if it is unsupported by adequate findings of the basis for the award, thereby precluding meaningful review") (citation omitted); see also Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1068 (Fed. Cir.1983) (stating that "[i]n determining the reasonableness of the award, there must be some evidence to support the reasonableness of, inter alia, the billing rate charged and the number of hours expended") (emphasis in original) (citation omitted). As we have noted, there "must be some findings, certainly more than an 'equitable instinct,' supporting the fee

18

award in order to provide a base for appellate review." <u>Water Techs. Corp. v. Calco, Ltd.</u>, 850 F.2d 660, 674 (Fed. Cir. 1988) (citation omitted).

## IX. DISCUSSION

After a careful review of the record, the Court finds the following with respect to the parties actions regarding the New Zealand patent and the '333 patent.

### A.

At the time Sherman put in motion the application for the '333 patent he knew that the New Zealand patent was pending and that it would be soon issued or possibly had already been issued. Sherman was a knowledgeable inventor.[20] He wrote the New Zealand application. It was at his direction that the application for the '033 application was filed.

Sherman's Rule 63 Declaration is dated September 14, 1996. Based on the record, it is clear that this date is incorrect. Indeed, the Declaration was not mailed to Sherman until September 17, 1996, as evidenced by a letter of that date to Apotex with the enclosed Declaration (without signature and date). The paper trail further shows that the Declaration was not available for Sherman to sign until September 26, 1996. The Declaration was not sent to counsel until October 1, 2006. All of this is fully set forth in Eon's reply brief at pages 6-9. The only conclusion which can be drawn from the evidence is that Sherman backdated the Declaration because he had learned, after September 14, 1996, but before September 26, that the New Zealand patent had issued. There is no satisfactory explanation to the contrary. The '033 application was filed on September 17, 1996.

---

[20] <u>See</u> n. 2, <u>supra</u>.

Apotex's Toronto office received notice that the New Zealand patent issued in May, 1996, on September 18, 1996. No effort was made to notify its outside counsel of this fact. Indeed, the outside counsel did not learn of the New Zealand patent until after the case was dismissed.

Additionally, once the case was dismissed, and Sherman and Apotex were confronted with Eon's motion for attorney fees and expenses, their efforts to determine why Sherman applied for a patent to which he was statutorily not entitled to fell short of what was reasonably to be expected of them in the circumstances. Sherman misstated the facts in his Rule 63 Declaration. Only after the Court required his deposition, and ordered him, as well as Apotex, to produce the documentary trail of the New Zealand patent, as well as the '033 patent, was the backdating of the Rule 63 declaration made known to Eon.

Despite faced with the apparent backdating, and the amended declaration of outside counsel, Sherman has not amended the declaration he filed in opposition to Eon's motion for attorney fees. Sherman has instead maintained the September 14, 1996 date. The failures associated with the application of the '333 patent by Sherman and Apotex have been compounded by the failure in which the two have attempted to explain themselves to the Court.[21]

---

[21] The Court is constrained to note that the documentary trail surrounding the New Zealand patent was only made known to Eon, and the Court, after a hard-fought battle with Apotex regarding discovery. Apotex's stonewalling, eluded to elsewhere in this decision, was nothing short of frustrating for all involved. Apotex also failed to appreciate the very difficult position it was in with respect to Eon's fee request, continuing to assert that Eon prevailed only because of a "technicality" and that Eon's infringement, an issue which can never be adjudicated, was "blatant." In other words, Apotex continued to focus on Eon's alleged conduct while being myopic to its own. All of this is exemplified in Apotex's letters to the Court dated March 7, 2006 and October 30, 2006.

B.

What the Court does not understand is why the invalidity of the '333 patent was not discovered earlier by Apotex, and for that matter, Eon.[22] A simple comparison of the date the New Zealand patent was issued and the date of the application for the '333 patent displays invalidity under §102(d). Only Fouillade, now deceased, knows why and how Sherman applied for a patent which was statutorily barred.

C.

What is even more mystifying is why the attorneys for Eon and for Apotex did not discover the invalidity until after five (5) days of trial, and only then after the Court's comments relating to the New Zealand patent.

A careful read of the file history of the '333 patent suggests the lawyers, who surely read the file history, should have been alert to the fact something was awry:

- The application was filed on September 17, 1996. It did not contain the inventor's signature

- On October 31, 1996, the examiner sent a notice that the inventor's signature was missing, and therefore a Rule 63 Declaration was required to be filed

- The Rule 63 Declaration filed on November 26, 1996 contained a glaring inconsistency. It stated in handwriting it was signed on September 14, 1996, while it recited that the application of which it was a part was filed on September 17, 1996.

---

[22] The Court has been advised by the New Zealand Patent Office that its patents went online in 2000.

Also, the Information Disclosure Statement By Applicant PTO Form-1499[23] contained no reference to the New Zealand patent.

•    The Office Action of March 28, 1997, mailed April 2, 1997, referenced the New Zealand patent and called attention to the possible right to claim a priority based on it. No priority was claimed.

All of this apparently was not of sufficient moment, separately or collectively, to cause any of the attorneys involved in this case to examine the New Zealand patent. The explanation solicited by the Court regarding patent prosecution practice and litigation practice regarding Patent Office cited references do not satisfy the Court that the attorneys both prosecuting and defending an infringement action did not fall short when they failed to read the New Zealand patent.[24]

## D.

Sherman and Apotex were chiefly responsible for the debacle that this case turned into. While there may not have been a deliberate attempt to deceive the Patent Office [only a fool would deliberately file for a patent contrary to the limitations of §102(d), and Sherman is no fool], the record supports a finding of gross negligence and a reckless indifference to

---

[23]  See 37 C.F.R, § 1.97, Filing of Information Disclosure Statements; MPEP 609 and Sheldon, How to Write a Patent Application (Practicing Law Institute), Ch. 8.

[24]  The Court, following the briefing on the motion, in a letter dated January 10, 2007, posed questions to the lawyers regarding the proper assessment of references cited by an examiner in the context of what occurred in this case. See Appendix prepared by the Court, attached as Exhibit F, for a recitation of the questions and a summary of the parties' answers. The answers were vague and self-serving.

The file history is typically an important factor in decision-making in a patent case. Notwithstanding the Court's efforts, the Court is uninformed as to the extent of the obligation of lawyers in a patent case to examine the file history and particularly references cited by the examiner.

the obligations of counsel as to make this case exceptional under 35 U.S.C. §285 and the precedents cited above, and calls for an award of attorney fees and expenses.

Eon, however, also bears a share of the blame; it was in the Court's view negligent in its failure to discover the error in the date of the New Zealand patent referenced on the facing page of the '333 patent. The aberration in the file history described above should not have escaped its attention.

## X. ATTORNEY FEES AND EXPENSES

### A.

The data filed by Eon in support of its request for attorney fees and expenses is voluminous. Likewise, the data filed by Apotex in opposition to the amounts requested by Eon is also voluminous.

Eon filed three (3) volumes of data, aggregating more than 1,000 pages consisting of:

- attorney and paralegal hours worked and rates
- invoices and payment papers
- expert witness charges, including hours and rates
- calculation of the amounts at risk should Eon be held to infringe
- American Intellectual Property Law Association data

### B.

Apotex responded with a like volume of data consisting of a detailed analysis of Eon's data by a legal auditor in an attempt to show that Eon over-lawyered its defense and that the expenses it incurred were excessive. Apotex also filed an analysis of Eon's data recalculated under Apotex's guidelines for attorney work and expenses in patent litigation.

C.

No useful purpose will be served by a detailed review of Eon's data. The Apotex analysis is highly argumentative. Eon's cyclosporin product was severely challenged by Apotex. Eon risked a substantial damages award should it be found to infringe. Whatever the excesses in Eon's defense, it was largely the consequence of excesses by Apotex in its prosecution of the case. The hours of attorney and paralegal work for which Eon seeks compensation and the hourly charges are not out of order. Likewise, the expenses Eon incurred do not appear to be excessive.

D.

Although the Court has discretion to make a percentage reduction, the case law typically deals with plaintiff's fee applications. See United States Football League v. National Football League, 887 F.2d 408, 413-14 (2d Cir.1989) (affirming district court's percentage reduction of attorney's fee award to account for plaintiff's lack of success); New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir.1983) (recognizing that because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," percentage cuts are "a practical means of trimming fat from a fee application"); Scanlon v. Kessler, 1998 WL 726047, at *4 (S.D.N.Y. Oct.14, 1998) (reducing plaintiff's lodestar figure by a percentage to account for plaintiff's limited success); Northcross v. Bd. of Educ. of Memphis City Sch., 611 F.2d 624, 636-37 (6th Cir. 1979) ("Hours may be cut for duplication, padding, or frivolous claims" by the "arbitrary but essentially fair approach of simply deducting a small percentage of the total hours.")

Here, except for the fact that Eon bears some responsibility for the fact that this case did not abort as soon as the complaint was read and the file history examined, and went

24

on for about five (5) years before it read the New Zealand patent and became aware of the misleading issue date, the Court would award it the full amount requested. However, the Court finds that a reduction in the amount requested is appropriate. Determining the amount of the reduction required careful consideration of the balancing of the parties conduct and culpability, all of which has been fully explained above. The Court was guided by principles of comparative fault in assessing the percentage reduction.[25]  In the end, the Court is satisfied that under the circumstances Eon's requested amount must be reduced by thirty (30%) percent. This figure represents in the Court's view a "reasonable" attorney fee as contemplated by section 285. Also, Eon is not entitled to prejudgment interest on its award due to its failure to properly defend.

## XI. CONCLUSION

Accordingly, Eon's motion for attorney fees and costs is GRANTED IN PART AND

---

[25]  For instance, the Court considered the following section from the Restatement Third, Torts, Apportionment of Liability, § 8:

Factors for assigning percentages of responsibility to each person whose legal responsibility has been established include
(a) the nature of the person's risk-creating conduct, including any awareness or indifference with respect to the risks created by the conduct and any intent with respect to the harm created by the conduct; and
(b) the strength of the causal connection between the person's risk-creating conduct and the harm.

25

DENIED IN PART. A judgment will be entered in favor of Eon in the amount of

$3,104,959.20 as attorney fees and expenses.[26]

     SO ORDERED.


                      s/Avern Cohn
                      AVERN COHN
                      UNITED STATES DISTRICT JUDGE


Dated:  February 23, 2007


I hereby certify that a copy of the foregoing document was mailed to the parties of record
on this date, February 23, 2007, by electronic and/or ordinary mail.

                      s/Julie Owens
                      Case Manager, (313) 234-5160

---

[26] The Court will entertain a motion by Eon for an additional amount relating to
attorney fees and expenses incurred subsequent to January 1, 2006 to bring their fees
up to date.

9/11

## EON'S SUMMARY OF EXPENSES

| Expense | Amount |
|---|---|
| Associate Charges/Professional Fees | $51,991.98 |
| Car Service | 11,148.62 |
| Computer Services | 2,426.85 |
| Court Reporters | 70,162.30 |
| Expert Witnesses | 438,057.07 |
| Express Mail | 64.60 |
| Fax Charges | 1,460.85 |
| Federal Express | 4,299.60 |
| In-House Photocopies | 38,343.75 |
| LexisNexis | 28,133.12 |
| Meals | 2,977.30 |
| Outside Photocopies | 60,062.55 |
| Pacer | 92.63 |
| Process Servers | 426.00 |
| Translations | 1,880.98 |
| Transportation - Local (taxi, subway, etc.) | 392.52 |
| Travel | 25,827.34 |
| Trial supplies | 471.42 |
| Westlaw | 56,094.63 |

Aggregate Expenses to April 28, 2006:     $794, 314.11

# Exhibit B

**EON'S SUMMARY OF ATTORNEY
AND PARALEGAL HOURS WORKED**

| Stage of Litigation | Hours Worked | Attorney Hours | Paralegal Hours |
|---|---|---|---|
| Preparation of Responsive Pleadings | 45.16 | 43.16 | 2.00 |
| Discovery | 7633.13 | 5426.3 | 2206.83 |
| Principal Motions | 1877.86 | 1664.14 | 213.72 |
| Preparation for Trial | 2622.70 | 1949.85 | 672.85 |
| Trial | 901.95 | 452.05 | 449.90 |
| Post-Trial | 32.25 | 29.25 | 3.00 |

Aggregate Attorney Hours:   9564.75 (24 attorneys)[1]

Aggregate Paralegal Hours: 3548.30 (10 paralegals)[2]

---

[1] Only nine attorneys worked over 2% of the aggregate attorney hours.

[2] Only seven paralegals worked over 2% of the aggregate paralegal hours.

Exhibit C

## RULE 63 (37 C.F.R. 1.63)
## DECLARATION AND POWER OF ATTORNEY
## FOR PATENT APPLICATION
## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

As a below named inventor, I hereby declare that my residence and mailing address and citizenship are as stated below next to my name, and I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled

**WATER SOLUBLE _____ CONTAINING CYCLOSPORINS**

the specification of which (check applicable box(es)):

☐ is attached hereto.

☒ was filed on **September 17, 1996** as U.S. Application Serial No. _____          (Atty Dkt. No. 2051-8)

☐ was filed as PCT International application No. _____ on _____

a n d (if applicable to U.S. or PCT application) was amended on _____

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above. I acknowledge the duty to disclose information which is material to the patentability of this application in accordance with 37 C.F.R. 1.56. I hereby claim foreign priority benefits under 35 U.S.C. 119/365 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed or, if no priority is claimed, before the filing date of this application:

Prior Foreign Application(s):

| Application Number | Country | Day/Month/Year Filed |
|---|---|---|
|  |  |  |

I hereby claim the benefit under 35 U.S.C. §119(e) of any United States provisional application(s) listed below.

| Application Number | Day/Month/Year Filed |
|---|---|
|  |  |

I hereby claim the benefit under 35 U.S.C. 120/365 of all prior United States and PCT international applications listed above or below and, insofar as the subject matter of each of the claims of this application is not disclosed in such prior applications in the manner provided by the first paragraph of 35 U.S.C. 112, I acknowledge the duty to disclose material information as defined in 37 C.F.R. 1.56 which occurred between the filing date of the prior applications and the national or PCT international filing date of this application:

Prior U.S./PCT Application(s):

| Application Serial No. | Day/Month/Year Filed | Status: patented, pending, abandoned |
|---|---|---|
|  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon. And I hereby appoint NIXON & VANDERHYE P.C., 1100 North Glebe Rd., 8th Floor, Arlington, VA = 22201-4714; telephone number (703) 816-4000 (to whom all communications are to be directed); and the following attorneys thereof (of the same address) individually and collectively my attorneys to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith and with the resulting patent: Arthur R. Crawford, 29327; Larry S. Nixon, 25640; Robert A. Vanderhye, 27076; James T. Hosmer, 30184; Robert W. Faris, 31362; Richard G. Besha, 22770; Mark E. Nusbaum, 32348; Michael J. Keenan, 32106; Bryan H. Davidson, 30251; Stanley C. Spooner, 25393; Leonard C. Mitchard, 29009; Duane M. Byers, 33563; Paul J. Henon, 33626; Jerry H. Nelson, 32481; John R. Lastova, 33149; H. Warren Burnam, Jr., 29366; Thomas E. Byrne, 32205; Mary J. Wilson, 32955; J. Scott Davidson, 33489; Jerry D. Craig, 38026; Alan M. Kagen, 36178; William J. Griffin, 31260.

1. Inventor's Signature: _____          Date: **Sept 17, 1996**

   Inventor: **Bernard** (first)          **J.** (MI)          **SHERMAN** (last)          **Canadian** (citizenship)

   Residence: (city) **Willowdale**          (state/country) **Ontario, Canada**

   Post Office Address: **50 Old Colony Road, Willowdale, Ontario, Canada M2L 2K1**

   (Zip Code) **M2L 2K1**

2. Inventor's Signature: _____          Date: _____

   Inventor: _____ (first)   _____ (MI)   _____ (last)   _____ (citizenship)

   Residence: (city) _____          (state/country) _____

   Post Office Address: _____

   (Zip Code) _____

3. Inventor's Signature: _____          Date: _____

   Inventor: _____ (first)   _____ (MI)   _____ (last)   _____ (citizenship)

   Residence: (city) _____          (state/country) _____

   Post Office Address: _____

   (Zip Code) _____

FOR ADDITIONAL INVENTORS, check box ☐ and attach sheet with same information and signature and date for each.

Exhibit D

| | Notice of References Cited | Application No.<br>08/715,033 | Applicant(s)<br>Sherman | |
|---|---|---|---|---|
| | | Examiner<br>Robert Gerstl | Group Art Unit<br>1201 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| | A | 5,563,105 | 12/96 | Kovacs | 514 | 11 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| X | N | 272,653 | 12/95 | NZ | Sherman | - | - |
| | O | 95/11039 | 4/95 | WO | Klokkers | - | - |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

### NON-PATENT DOCUMENTS

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| | U | | |
| | V | | |
| | W | | |
| | X | | |

* A copy of this reference is not being furnished with this Office action.
(See Manual of Patent Examining Procedure, Section 707.05(a).)

U. S. Patent and Trademark Office
PTO-892 (Rev. 9-95)

Notice of References Cited

Part of Paper No. __4__

CONFIDENTIAL

A 000068

Exhibit E

US005798333A

## United States Patent [19]

### Sherman

[11] Patent Number: 5,798,333

[45] Date of Patent: Aug. 25, 1998

[54] **WATER-SOLUBLE CONCENTRATES CONTAINING CYCLOSPORINS**

[76] Inventor: **Bernard C. Sherman**, 50 Oldcolony Rd., Willowdale, Ontario, Canada, M2L 2K1

[21] Appl. No.: **715,433**

[22] Filed: **Sep. 17, 1996**

[51] Int. Cl.⁶ ........................................ A61K 38/00
[52] U.S. Cl. ............................................... 514/11
[58] Field of Search ...................................... 514/11

[56]                    **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,388,307 | 6/1983 | Sandoz | 514/11 |
| 5,342,625 | 8/1994 | Sandoz | 514/11 |
| 5,583,105 | 12/1996 | Kovacs | 514/11 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 2255033 | 12/1992 | United Kingdom . |
| 2228048 | 10/1990 | United Kingdom . |
| 00222 | 10/1994 | WIPO . |
| 95/11039 | 4/1995 | WIPO . |

*Primary Examiner*—Robert Gerstl
*Attorney, Agent, or Firm*—Nixon & Vanderhye P.C.

[57]                    **ABSTRACT**

The invention is directed to pharmaceutical compositions which enable high concentrations of a cyclosporin and are water-soluble, such that the compositions will dissolve in aqueous media without precipitation of the cyclosporin. The compositions comprise a cyclosporin dissolved in tocophersolan and a hydrophilic organic solvent, preferably propylene glycol.

**15 Claims, No Drawings**

EXHIBIT
A

EXHIBIT F

APPENDIX

THE COURT'S INQUIRY OF JANUARY 10, 2007

A. Questions to the Lawyers

What is the significance of the Notice of References cited in
paper 4? What is the significance to the priority statements in
paper 4? What do the Notices of References cited and the
priority statement mean to the lawyer prosecuting the
application? Would a competent lawyer prosecuting the
application check out the references cited?

When a patent issues with references cited what would a
competent lawyer who prosecuted the application do with
regard to them?

When a party is sued for infringement and the patent-in-suit
lists references, what would a competent lawyer representing
the party do regarding them?

B. Responses

Eon answered.

As to the first question, Eon stated, after explaining the Patent Office rules relating

to references in some detail, and particularly how they played out in the context of the '333

patent:

> Absent the benefit of hindsight, the file history of the '033
> patent would lead a prudent attorney to conclude that "NZ
> 272,653" was the New Zealand equivalent of the '333 patent
> application, disclosed the same subject matter as the U.S.
> application, was not prior art to the U.S. application, and
> therefore was of no interest.

As to the second question, Eon said that the prosecuting attorney would only ensure

that the references were accurately stated. There is no obligation on the part of

prosecuting counsel to obtain a copy of any of the references, even if the circumstances

were where the prosecuting attorney sees what appears to be a foreign reference to the patent that appears to apply to the application which he or she is prosecuting, and has not been advised by the client of its existence.

As to the third question, Eon stated the actions of a prudent attorney representing the defendant varies:

> For example, where, as here, the reference under consideration is the applicant's own corresponding foreign application, there is no difference between what is disclosed in the foreign application and the content of the corresponding U.S. application. However, when the cited reference is the work of another, a third party, then critical review of the reference is required to ensure that all similarities and differences between the reference and the patent are considered.
>
> ...the information that is in the file history concerning "NZ 272,653" indicates that it is not prior art to the '333 patent. Therefore there was no red flag raised by the '333 patent file history about plaintiffs' conduct concerning the New Zealand application.
>
> A prudent attorney reviewing the file history therefore would have concluded that the content of "NZ 272,653" was the same as that of the U.S. patent, that "NZ 272,653" was not prior art to the subject matter of the '333 patent, and that "NZ 272,653" did not affect the validity of the '333 patent.

C.

Apotex answered.

As to the first question, Apotex says if the examiner bases action on a reference, a detailed study of the reference is in order. Here since the examiner did not take action on the New Zealand reference:

> A competent attorney prosecuting the U.S. application would have had no reason or obligation to investigate the content of the New Zealand reference since no rejection was based on

2

that document to which a response would have been required. ... In the Notice of References Cited that accompanied Paper 4, the examiner listed the New Zealand patent document and indicated the date of the document as December, 1996, that is, after the filing date of the U.S. Application. A lawyer prosecuting the U.S. application would have had no reason to question the accuracy of that date.

As to the second question, Apotex says:

Normally, a lawyer who prosecuted the application would take no action in connection with references cited in an issued patent. A lawyer might confirm that all of the references cited by the examiner and in any IDS were listed on the patent, but he would have no reason to review the contents of those references.

As to the third question, Apotex says:

A competent lawyer representing the party accused of infringement would obtain a copy of the file history of the patent-in-suit and copies of all of the references cited in the patent and any additional references cited in any office action of IDS to find weaknesses in the patent at issue.

A competent attorney would be expected to examine every sentence in a patent-in-suit and the corresponding file history from which to launch an attack focused on (1) inequitable conduct (2) the credibility of the inventor and the prosecuting attorney and (3) the search for invalidating prior art that was not considered by the Examiner.



LAW OFFICES
# CAESAR, RIVISE, BERNSTEIN, COHEN & POKOTILOW, LTD.

PATENTS, TRADEMARKS, COPYRIGHTS

ALAN H. BERNSTEIN    MICHAEL J. BERKOWITZ    FRANK M. LINGUITI        WILLIAM C. YOUNGBLOOD*    A.D. CAESAR (1901-1995)
STANLEY H. COHEN     SCOTT M. SLOMOWITZ*     GARY A. GREENE          DAVID B. GORNISH*         CHARLES RIVISE (1900-1951)
MANNY D. POKOTILOW   MONA GUPTA              MICHAEL J. CORNELISON   DANA M. KOLESAR*          COUNSEL
BARRY A. STEIN       DAVID M. TINER          BRUCE J. CHASAN                                  ALLAN H. FRIED, PH.D.
MARTIN L. FAIGUS     SALVATORE R. GUERRIERO* MARINA E. VOLIN*
ERIC S. MARZLUF      JAMES J. KOZUCH         LYNN M. TERREBONNE, PH.D.                         * ALSO ADMITTED TO PRACTICE IN NJ
ROBERT S. SILVER     WILLIAM J. CASTILLO*†   MARC B. BASSLER                                   † ALSO ADMITTED TO PRACTICE IN NY

March 7, 2006

Honorable Avern Cohn
United States District Judge
Theodore Levin U.S. Courthouse
Eastern District of Michigan
231 W. Lafayette Blvd., Room 219
Detroit, Michigan 48226

     **Re:**    **Apotex, Inc. v. Eon Labs Manufacturing, Inc.**

     **Sub:**   **Civil Action No.: 01-0482**
            **Our Reference No.: A1047/40006**

Dear Judge Cohn:

    Apotex responds to Eon's letter of March 7, 2006 regarding costs and attorneys' fees in the above referenced litigation.

    Eon has grossly mischaracterized the Stipulation of Dismissal (copy enclosed) that the parties entered into. <u>The Stipulation did not stipulate that the patent was not infringed</u>, it merely stated that the patent was invalid on the very narrow ground of 35 U.S.C. § 102(d). As shown at trial Eon clearly infringed the '333 patent.

    Eon prevailed in this matter only by virtue of a technicality for which Eon expended no costs. None of Eon's evidence or arguments were able to persuade the Court or substantiate the evidentiary burden faced by Eon in proving its sham defense of non-infringement. Eon's easy victory came at Apotex's enormous expense of defending its patent against a recalcitrant infringer with a baseless non-infringement defense.

    In view of the unusual circumstances of this case, it would be clearly unjust for Apotex to carry the extreme burden of paying Eon's expenses when, in fact, it was Eon who blatantly infringed Apotex's '333 patent and failed to fully conduct a factual investigation into an invalidity defense. Had Eon properly performed a file history study upon filing of the suit, the case would have been dismissed immediately.